rdANLY. J.
If the caso stood alone upon the- mental incapacity of Jesse Whitaker, deceased, wo might feel constrained to send it-'to a jury to have an issue on that point tried.
It seems an inquisition was had in Buncombe, according to the usages of la tv, Which resulted in a verdict that the *47 subject was non compos 'mentis, wbicli was reported to the County Court at its April Session, 1857. From ibis there was an appeál to the Superior Court of the county, and' this appeal was pending at the time of his death.
. The evidence which has been laid before us preponder-, ates, we feel at liberty to say, in favor of the finding of the jnry, but as the inquisition was not finally acted upon and settled by a jury upon testimony viva toce, it would be more in accordance Avi’th the caution with which this court proceeds in matters of so great importance, to send it to the customary tribunal to have the'fact established'the one way or the other. • 1
But we do not think the'case necessarily turns upon this point. There . are other ■ well settled principles of equity which’ dispose of it.
Whatever may be the degree of doubt left upon the precise mental condition of Jesse Whitaker, about the time of the transactions in question — if he could not at that time he properly classed amongst non compotes mentis technically, it is nevertheless certain that he was very old, was prostrated by .disease and intemperance, and his memory and will, at least, exceedingly uncertain and .fluctuating,
lie was advised bv friends, upon whose counsel- he ball theretofore relied, not to make the ba-gain. without further in formation: and it was then understood and agreed, the defendant Brown 'being present, that no farther action should bo taken in the matter until the information needed was obtained.
After this arrangement, the friends of 'Whitaker left the house, and thereupon, Brown, having remained, renewed the negotiation anu effected the alleged sale of his land.
The further fact in this case is' established to our satisfaction, that the price demanded and,received for the land js twice its t:uo value. ’
*48 Here then arc extreme imbecility of mind in the subject oí the alleged fraud — an opportunity selected when he was ‘ without counsel,’ in fraud of an agreement — secrecy in the transaction, and imposition in the price.
These are sufficient, we think, to call into action the interference and aid of this court.
This occasion or source of equity jurisdiction is fully explained in the eases of Amis vs. Satterfield, 5 Ired. Eq. 173, and Freeman vs. Dwiggins, 2 Jones Eq. 162.
The voluminous evidence which has been filed intuís cause, establishes with sufficient- clearness the narrative we have given, us' the true state'of the facts, according to the ' r.terpreiatio:. most favorable, to the defendant, and the cases establish the principle, that the court Arid annul a contract made under .such circumstances, and remit the parties us far its it is practicable to do so, to' their previous positions. To tills cud a decree may be drawn, -perpetuating the injunctions heretofore granted, annulling the contract marked Ain,the papers, and directing a return oí imeh notes, crdci'3, or other securities as were given for the purchase nr.-noy.